THOMAS KELLY AND WALTER L. RICHARDSON, AS ADMIN-
ISTRATORS, &C., Respondents, *against* JAMES SHEEHY,
Appellant.

(Decided April 1st, 1878.)

Where the evidence upon a question of fact is conflicting or so uncertain as to admit
of being interpreted differently, the finding of the jury upon such question will,
upon appeal, be regarded as final.

A verdict will not be set aside on the affidavit of a juryman that the jury, under a
mistaken view of the facts of the case, had made an error of computation in
arriving at the amount of such verdict.

APPEAL from a judgment for the plaintiffs, entered upon
a decision of the general term of the Marine Court of the
city of New York, affirming a judgment entered upon a ver-
dict rendered for the plaintiffs at a trial term of that court,
and affirming an order denying a motion upon the minutes
for a new trial.

The plaintiffs, Thomas Kelly and Walter L. Richardson,
as administrators of the estate of Henry H. Richardson,
deceased, brought this action to recover $200, the amount of
three promissory notes made by the defendant, James Sheehy,
to Ellen C. Richardson, an administratrix of the estate, who
had been removed from her office. The notes were given as
part payment for goods of the estate bought by Sheehy.

The answer set up a counter-claim, alleging non-delivery
of a part of the goods, a deficiency in the value of others
below schedule values fixed by terms of sale, and alleged an
agreement that defendant was to be paid by plaintiffs the
amount of any such deficiency in value or quantity when
ascertained.

Among the goods sold were certain orders, or subscrip-
tion lists to serial publications, and there was conflicting evi-
dence as to whether the agreement for the payment of short-
age was intended to apply to these orders or lists if the sub-

scribers on the lists should not prove to be paying subscribers, or whether it was only intended to apply to the tangible goods mentioned in the schedule of sale.  Upon the hearing of the motion for a new trial, there was submitted to the court an affidavit of a juryman to the effect, that the jury, in allowing the defendant's counter-claim for nondelivery, had deducted a certain percentage under the erroneous impression that such deduction had not already been made.  The jury rendered a verdict for the plaintiff in the sum of $164 57.

J. *McKee*, for appellant.

*W. I. Butler*, for respondent.

CHARLES P. DALY, Chief Justice.—I think the general term of the Marine Court were right in affirming the judgment.    The notes sued upon amounted, with interest, to $222 27.    The jury gave a verdict of $164 57, showing that they allowed the defendant $57 70.

It is by no means clear upon the evidence for what deficiency in the schedule a deduction was thereafter to be made from the amount of the notes.   The defendants, Pollard, Laing and Mrs. Richardson, all agree that there was some understanding in respect to a deduction in case of a deficiency, but whether it was limited to a deficiency in the amount of goods in the store, or embraced orders marked in the schedule as good if they should not turn out to be so, is doubtful upon the whole evidence.   The jury were of opinion, as appears from what was said by one of them in the presence of the rest on the rendition of the verdict, that the $108 which the plaintiff admitted to be the value of the orders was not proved.   That is, as we must understand it, that they did not think that the evidence established that a deduction was to be made to the defendant for any orders that might not prove to be good, and the twelve men in the jury box were quite as competent to judge of the evidence upon that point, which was a question

of fact, as an appellate court. The defendant's statement of the agreement was, that if anything fell short, which was represented on the schedule, they were to pay him back for that amount. Pollard (the defendant's witness) testimony is, that they would make good any deficiency between their list and what *goods* he received; that the defendant gave the notes and paid the check upon the condition that anything short should be made good to him. When recalled, Pollard said the agreement was, that *any goods* that were short from the schedule would be made good; and again, after saying that his recollection was not good, that these were deductions to be made, but what they were to be had passed from his mind; and again, that they were to pay the defendant for any deficiency from what appeared on the schedule; that what ran short of the schedule, the defendant was to be paid for, whatever that might be. Laing was not aware that there was any different offer subsequently made than that which was contained in the written proposition, which, in his opinion, expressed everything. The defendant had been allowed a deduction of $253 63 for sales made pending the negotiation, and Laing's idea was, that if the deficiency in consequence of these sales should prove to be more than the $253 63 allowed, the extra amount was to be returned to the defendant, and that that was why one of the notes was left in escrow. His further evidence was, that during the six weeks that the negotiations were pending, the defendant was several times at the store; that he examined the stock over; that every facility was given to him to find everything, so far as the stock was concerned; that he had ample time to examine it, and certainly saw what he was buying. The administrators' understanding was, that if anything should be found short or deficient in the schedule, it was to be made good to the defendant, or paid back to him; that her counsel said that if there was anything deficient when the stock was counted, it would be made good to him. The proposition in writing, which was to buy for $3,500, was, that any goods sold after August 28, were to be allowed defendant, which was afterwards carried out, by

allowing him $253 60 for goods sold after that time, and there is nothing in the written proposition about deductions for orders which might not prove to be good, which was certainly as material in the written proposition which the defendant then made and signed, as it could be afterwards. In a doubtful case the written proposition which the defendant himself offered was very weighty evidence, as the amount contained in the proposition, after deducting the $253 60, which was therein provided for, was the sum afterwards agreed upon ; and it may well be that Laing was right, that what was meant by a further deduction was, that if it appeared that afterwards, upon comparing the goods in the store with the schedule, that more had been sold than $253 60 worth, that the defendant was to be allowed for the deficiency. It was conceded that no fraud had been practised in the transaction, and taking the whole of the evidence together, the question whether anything more was intended than a deficiency in the goods in the store, as enumerated in the schedule, or whether the value of orders which should not prove to be good was also included, was, to say the least of it, so uncertain upon the evidence, and so doubtful as a question of fact, that it was one exclusively for the jury, whose conclusion, either one way or the other, would, upon appeal, be regarded as final, it being the province of the jury to pass upon questions of fact, where the evidence is conflicting, or so uncertain as to admit of being interpreted differently. My own impression from the perusal of the testimony is, that the written proposition submitted by the defendant was the best guide in determining what deficiency he meant to provide for.

The administratrix, in making out a schedule of the property of the deceased, put down in good faith a list of subscribers which the deceased had for serial publications, with their residences, and who were deemed good and so marked in the schedule, being a pecuniary interest, the value of which was put at $200 in an estimation of the value of the whole of the property, which was put down at the wholesale prices, so far as it was good, whilst the old stock was put

down at what was supposed to be its value, there being an error in respect to the value of some old bibles, which were put down, probably unintentionally, at too high a rate; but of the value of which the defendant was able to judge, as he was in the trade, and had examined the stock before he made his purchase, and probably before he made his offer to buy at a deduction of 30 per cent. from the value put down in the schedule. The value of a list of subscribers to serial publications to be thereafter delivered was by no means a reliable one, as it was subject to contingencies which might diminish its value, such as the loss of subscribers who, from inability or otherwise, might refuse to continue to take the work; or who, having removed from the residences where the publications were delivered them, could not afterwards be found, or exactly what was shown to have taken place in this case; and if the number proved, as in this instance, to be large—124 out of 275 subscribers—it was doubtless owing to another contingency, to which such pecuniary enterprises are also subject, and which, in this case, is a matter of general knowledge—the pecuniary pressure or hard times that have prevailed since the year 1876. Thus we have, in the entries upon the subscription-list produced by the defendant in the year 1877, such answers as these: "Don't want any more; can't afford." "Too poor to continue." "Don't want any more at present." "May take after a while." "Will complete when she can afford the money." "Don't want any more." "Don't want to continue," &c., &c. The defendant, who was a bookseller, knew the value of such an interest necessarily much better than the administratrix and her legal adviser who sold him the property. He bought it for a round sum, at a deduction of 30 per cent. from its esti-mated value, and may very well be assumed to have taken the uncertain value of such an interest as this into consideration, where the loss from subscribers refusing to continue was but $108, and the deduction allowed him from the estimated value was $1,500. It may well be assumed that if he meant to provide for a rebatement from the sum offered for such subscribers as should not continue or not prove to be

good, that he would have been as careful to have that inserted in the written proposition as he was to provide that any stock mentioned in the list taken on the 9th day of August that may have been sold was to be deducted from the $3,500 offered ; and if there is any doubt in the case, arising upon the evidence, it is whether the jury have not really allowed him more than he was strictly entitled to.

We cannot take into consideration an affidavit made by a juror that the jury meant to allow $88 91, but through a mistake of facts deducted 35 per cent., or $31 11 from that amount, being led into that error because it appeared that the prices at which all the goods were purchased was about 35 per cent. less than the amount at which they were appraised. It by no means follows that this was an error. But whether it was or not, the verdict of a jury will not be set aside upon an affidavit of this kind made by one of the jurors.

The judge's charge, whether it had or had not the effect attributed to it by the appellant, is not brought under review by any exception to any part of it, or by any request to charge. Where there has undoubtedly been a misdirection on the part of the judge, either as respects the law or the facts, which it is evident has misled the jury, or would necessarily have that effect, the judgment may be set aside, although no exception was taken. But that was not the case here. The charge upon what was an uncertain state of facts left the case very fairly to the jury, and I see nothing in it which would entitle us to say that he necessarily misled the jury, either as to the facts or the law. On the contrary, in such a case, I think it was a very fair charge, quite as favorable to the defendant as to the plaintiff, and that there is nothing in it that would justify us in disturbing the verdict.

The judgment should be affirmed.

JOSEPH F. DALY and VAN HOESEN, JJ., concurred.

Judgment affirmed.